## JOS. C. BENNETT ET AL. v. MARY C. MORRISON.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued April 30, 1888—Decided May 14, 1888.

1. The mere recovery of a judgment by a vendor of lands in an action of ejectment against the vendee to enforce payment of the purchase money, is not of itself sufficient to make the possession of the defendant, continued thereafter, adverse and hostile to the vendor, in view of the statute of limitations.

2. A defendant in ejectment testified to a continuous possession first taken by him under a parol purchase and payment more than twenty-one years before suit, and the payment of taxes during that period: *Held*, that the evidence should have been submitted to the jury in support of his claim of title by adverse possession.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ., TRUNKEY, J., absent.

No. 148 July Term 1887, Sup. Ct.; court below, No. 92 September Term 1884, C. P.

On August 19, 1884, a summons in ejectment was issued by Catharine Miller (afterwards marked to the use of Henry W. Morrison and Mary C. Morrison, in right of said Mary C. Robinson), against.Joseph C. Bennett and Ann Bennett, to recover possession of a lot of ground in the borough of Warren. The defendants pleaded, not guilty.

At the trial on October 6, 1886, it was admitted of record that Rachael Weatherby should be treated as the common source of title, when the plaintiff proved possession by the defendants; deed, Rachel Weatherby to James Bennett, dated October 25, 1875, in pursuance of a contract of sale dated

April 9, 1864, deed, James Bennett and wife to Mary C. Morrison, dated October 3, 1883; deed, Henry W. Morrison and wife to Catharine Miller, dated May 12, 1884; deed, Catharine Miller to Mary C. Morrison, dated November 3, 1884; and then plaintiff rested.

Joseph C. Bennett, a defendant, testified, in his own behalf, that along in 1862 Chester Dennison was in possession of the lot, built a house on it, the same house that is still upon the premises; that Dennison lived in that house until about the first of August, 1863, when witness gave him $15 for possession; "he delivered the key up to me for possession;" that on August 4th the witness let Mr. Hill occupy the house until the following spring, so as to repair his own house that winter; that about April 1, 1864, witness moved back into the house which Mr. Hill had occupied and had remained in it ever since; that the lot was then inclosed and had been when occupied by Dennison. "Q. State whether, when you went into possession of the premises, you went in by permission by James Bennett or from Mrs. Weatherby. A. I had no leave whatever; never had anything to say or do, or any contract, with anybody whatever but Mr. Dennison." The witness testified also that he had paid the taxes on the property since 1863, and was corroborated as to his possession and the payment by him of the taxes, by Daniel Gross and John Jones, collectors, and as to possession by other witnesses.

In rebuttal, the plaintiff put in evidence an admission of record that Rachel Weatherby, if present in court, would testify that some time prior to 1862, she had sold the lot in controversy to Chester Dennison by articles of agreement, and that, on April 15, 1862, she caused a writ of ejectment for non-payment of the purchase money to issue against said Dennison, for said land, to No. 60 June Term 1862, and on September 6th of the same year obtained a judgment in said action. This judgment, it was stated, had been obtained by default. The record of said ejectment, the judgment in which had not been enforced by execution, was also put in evidence, and James Bennett, the grantee in the deed from Mrs. Weatherby, called, who testified that in April 16, 1863, he bought the interest of Chester Dennison in the lot and received from him his contract with Mrs. Weatherby; that after-

wards he purchased by a written contract the interest of Mrs. Weatherby: "About the time I made this trade I was stopping in Warren, with father and mother. They lived in that old house back of the foundry. Three brothers lived there then with them, Tom, Joe and myself. This matter of the purchase from Dennison was frequently talked of in the family, and in Joe Bennett's presence; many times every day. He never said anything to me about having bought Dennison out; I never knew anything about it until yesterday." The witness testified, further, that after the death of his parents, Joseph had agreed to pay him $25 per annum rent for the property, and the taxes. Other testimony was adduced in rebuttal of the plaintiff's case.

The court, BROWN, P. J., charged the jury and answered the defendants' points as follows :

The plaintiff having exhibited a title to the property in dispute perfect on its face [we think there is no evidence to go to the jury of such adverse possession in the defendants and those under whom they claim, as will defeat the plaintiff's right to a verdict.] [3] Therefore we say to you that upon the undisputed evidence your verdict should be for the plaintiff.

The defendants' points are :

1. That the recovery of judgment by Mrs. Weatherby in the action of ejectment brought by her against Chester Dennison terminated the contract and all privity between them, and the possession held by said Dennison thereafter was hostile and adverse to that of Mrs. Weatherby.

Answer : Refused.[1]

2. If the jury believe that Chester Dennison transferred his possession to Joseph Bennett, the defendant, such transfer was an assertion of his hostile and adverse possession as against Mrs. Weatherby and everybody else.

Answer: Refused, so far as the same is claimed to be applicable to the case on trial under any evidence in the case.[2]

The jury returned a verdict for the plaintiff. A new trial being refused and judgment entered, the defendants took this writ assigning as error:

1, 2. The answers to the defendants' points.[1] [2]

3. The part of the charge embraced in [ ] [3]

*Mr. W. M. Lindsey* (with him *Mr. S. P. Johnson* and *Mr. James O. Parmlee*), for the plaintiffs in error:

1. After September 6, 1862, when Mrs. Weatherby obtained her judgment in ejectment against Dennison, the possession of Dennison, theretofore under Mrs. Weatherby, was thus terminated by her own act and thereafter was adverse and hostile as though no relation of trust or confidence between them had ever existed: Pipher v. Lodge, 4 S. & R. 569. If, after a contract for the sale of land, the vendor " brings ejectment for the land, he violates his own contract, unless the condition be broken by the vendee, and if it be, the vendor ought to show it:" MARSHALL, C. J., in Blight v. Rochester, 7 Wheat. 548. It will be observed that in Pipher v. Lodge, supra, the statute was held to begin to run as against the vendee when the vendor leased the land to another and the lessee entered. The court say that this would be an actual disseisin. From this the principle would naturally be deduced, that, so far as the vendor is concerned, the running of the statute was started by his executing the lease ; and the act of the lessee was only the notice to the vendee which fixed the date from which the 21 years was to run.

2. If, then, the vendor, by leasing to a stranger, can so terminate the relation as to start the running of the statute, why is not the same result effected when the vendor obtains his judgment in ejectment against the vendee? " Whenever the legal title is in one and the real interest in another, these form but one title, and the statute does not run between them until the trustee disclaims and acts adversely to the cestui que trust:" Rush v. Barr, 1 W. 120; Price, Lim. & Liens, 119. Ordinarily, the beginning of the running of the statute " is when the adverse possession shall be taken or held against any one having a present right of possession:" Price, Lim. & Liens, c. VIII. When a vendor enters a judgment against the vendee in an ejectment begun by adversary process, it is as decisive a declaration terminating the trust as can readily be imagined. The vendor by her own declaration, makes her former vendee an adverse and hostile holder: Martin v. Jackson, 27 Pa. 510; Pipher v. Lodge, supra; Scott v. Gallagher, 14 S. & R. 333.

*Mr. Charles Dinsmoor* (with him *Mr. James Cable*), for the defendant in error:

1. Before the purchase by James Bennett from Dennison of the latter's rights and possession under Mrs. Weatherby, she had recovered a judgment by default in an action of specific performance against Dennison. But we have the authority of Chief Justice GIBSON for the proposition that "nothing is clearer than that such a recovery is not equivalent to an entry, even to bar the statute of limitations, and therefore not equivalent to an actual possession:" Dowell v. Smith, 2 W. 126. See also, Workman v. Guthrie, 29 Pa. 495; Pederick v. Searle, 5 S. & R. 236.

2. An adverse character cannot be given to a possession which had originally been in subordination to the title of the true owner, except by some clear, positive and unequivocal act on the part of the party in possession, which challenges the title of such owner. And as such hostility must have its origin in the animus and purpose of the party in possession, the challenge must come from him, and not from the true owner, who is presumed to permit the continued possession upon the terms of the original contract. Where he who sets up the statute of limitations came in expressly or legally in subservience to the title of the owner, he cannot be permitted to set up his subsequent continued possession as adverse. Before the statute commences to run in favor of such an occupant, the privity between him and the owner must be disowned by him—severed by some unequivocal act: Cadwalader v. App, 81 Pa. 194; Bannon v. Brandon, 34 Pa. 263; Eichelberger v. Gitt, 104 Pa. 64; Hood v. Hood, 2 Gr. 229; Martin v. Jackson, 27 Pa. 504.

OPINION, MR. JUSTICE PAXSON:

We do not think the mere fact of the recovery in the action of ejectment brought by Mrs. Weatherby against Chester Dennison rendered the possession of the latter hostile and adverse to Mrs. Weatherby. The judgment was by default; the ejectment was to enforce the article of agreement, and therefore in affirmance of it. No subsequent proceedings were ever had upon this judgment; no habere was issued, nor was possession delivered to the plaintiff. Such a recovery is not equivalent to an entry, even to bar the statute of limitations, and

therefore not equivalent to actual possession : Powell v. Smith, 2 W. 126 , Workman v. Guthrie, 29 Pa. 495.    The vendor of land sold under articles of agreement must not only in some way repudiate the agreement, but must take actual possession of the premises either in person, by an agent, a tenant, or another vendee, in order to break the relation his vendee sustains to him under the agreement, before the statute will commence to run.

If the recovery in the ejectment were all there is in the case, the court below would have been right in withdrawing it from the jury and directing a verdict for the plaintiff.    But there is the testimony of the defendant himself, who swears that he paid Dennison $15 for the possession in 1863; that Dennison delivered up the key to him in pursuance thereof, and that he has been in adverse possession ever since; that he never paid any rent to his brother James; that he claimed to own the property and repudiated his brother's claims as landlord; and also that he has paid the taxes thereon continuously since 1863.    It is true all this is denied by the plaintiff, and it is quite possible the jury would find the truth on her side.    But the evidence amounts to more than a scintilla, and it was error to withdraw it from the jury.

> The judgment is reversed, and a venire facias de novo awarded.